May it please the Court, Juan Rocha on behalf of Appellant Shirley Ann Morgan, I'd like to reserve two minutes for rebuttal. You may. Your Honors, in this case the Court is deciding whether the invocation of a right to counsel still has any meaning. In Edwards v. Arizona, the Supreme Court laid down a bright line rule, a rigid rule, in which it said that any time a suspect invokes his right to counsel, all questioning must cease. Now, before I go on to say a few words about Edwards, I also want to say that the Court asked us to also review the Orso case. We also believe it is relevant to this case as well, and I'll get to that in a moment. But if it's relevant, you didn't raise it before, right? No, Your Honor, we did not raise that case. So, why not? You said your best case was Brown, right? Well, I think our best case is still Edwards v. Arizona in this case. So, Your Honors, in Edwards v. Arizona, the suspect, after he was arrested, invoked his right to counsel. And then the very next day, two different police officers came to the cell and talked to Edwards. They asked him if they wanted to talk to him. They re-read him his Miranda rights, and then Edwards waived his Miranda rights, and then asked to listen to his accomplice's statement. And there, the Supreme Court, by Justice White, said that that was a- Well, I think your factual scenario is a little bit different. Now, the Supreme Court has indicated that words or actions reasonably likely to elicit incriminating responses can be the functional equivalent of interrogation. But the Supreme Court has also specifically excluded actions normally attendant to arrest and custody. And here, the government's argument is that this was the re-reading of the Miranda rights per the form was part of their processing. So, how do you think those facts play out in your case? Well, Your Honor, in Edwards, all they did was they re-advised Edwards of his Miranda rights. And it's unclear. Justice White talks about it. It's not clear what led Edwards to then talk. He waives them, and then he goes on to say, I want to listen to the accomplice's statement. So the court said that was not allowed under Miranda. And that's exactly what happened in this case. Are you saying the advisement of the rights is an interrogation? Well, Your Honor, what we're saying is that the way they re-initiated, there's no case that holds that the re-initiation is not interrogation. All right, but aren't there cases that say that the advisement of the rights is not interrogation? Well, the government cites the Ichiyasu case, which has the initial advisement. But Ichiyasu is actually intentioned. There's a tension between Ichiyasu and the Smith v. Illinois case in which the Supreme Court, in that case, the defendant was being read his Miranda rights. And the court said that once he had invoked, the police could not finish reading his Miranda rights. In fact, Justice Rehnquist in dissent says, what's going on here? All they were doing was actually just re-reading his Miranda rights. Or, I'm sorry, reading his Miranda rights. Why is that interrogation? And the court there found that any time a suspect invokes his right to counsel, all questioning must stop. Well, what factual findings did the district court make in terms of, because at the hearing, the officers, why did the officers testify that they read the rights for the I-214? Well, they said that it was part of the processing. That's what the officer testified. The court found that it was part of attending to arresting circumstance. But there was no reason for the border patrol officer. All right, but I'm trying to figure out, what are factual findings and what are de novo review? And part of the government's theory on the case was that this was a process that they went through with everyone, regardless of whether they spoke or not, and this I-214. And my review of the record seems to indicate that the district court believed that testimony, that this is a process that they have. Is that correct? Yes, that's correct, Your Honor. That's what the court found. But we think that it doesn't matter what you call it. There was no reason. The government has never justified why the I-214 should have been used to re-advise Ms. Morgan in this case. Okay, so the factual finding is that it was a process that they followed. So that is a factual finding that we're stuck with. But you were then saying that, so we know that that was read. We know that your client invoked. So, you know, those sort of facts aren't really disputed. But then don't you get into the functional, what's the functional equivalent? Well, Your Honor, so we think that the functional equivalent, here there's two, here now I'll speak to the Orso case. On the one hand, again, we believe our case is like Edwards. All Edwards did was they had re-advised him, he waved, and then he asked to speak. Well, the reason I said that your case is worse than Edwards is that in that case, the officers went back, the detectives went back to where the defendant was incarcerated the next day. And the detectives said they wanted to talk to the defendant. The defendant said he didn't want to meet with the detectives, but he was told by, I believe, one of the guards that he had to meet with the detectives, and then it started from there. He was put in a room with the detectives, then they told him they wanted to talk to him. Here, the government's position is that the re-advisement, the re-reading of the rights under Form I-214 was part of their processing. So that gets back to my question as to whether this is a procedure that's normally intended to arrest in custody. Is your argument then any time the suspect is re-advised of his or her Miranda rights, regardless of whether it's part of processing or not, that constitutes the functional equivalent of interrogation? Is that your answer? Under Edwards, yes. That's our position that that's what the Edwards. Now, if the I-214, which is excerpt record, page 56, the very first question on the I-214 says, before we ask you any questions. I mean, that's the first thing. It's not on the conditional, like we might ask you questions or if we ask you questions. It's in the declarative, before we ask you questions. So we think there's some similarity as far as when Edwards is brought out to talk to the police. So what your argument boils down to is, if they had read her the rights and not, they advised her at the initial intercept, correct? And then they drove her to, didn't she? Yes, she invoked when she was arrested. Then they went to the port patrol station in Casa Grande. Yes, and how much interval of time occurred in that? It was between two and two and a half hours, about 110 miles. In that sense, it's sort of like Arso. So they advised her and she invoked her right to counsel at the initial stop. Then she goes and if in the car or when they got there, didn't read her anything. What you're saying is, what they did by reading it to her was as if they said on the ride, well, we know you've invoked your right to counsel, but just to be sure, if we ask you any questions, you have the right to remain silent. You're trying to build that kind of scenario by virtue of their reading a form when she gets to a new location and they re-Mirandize her? Your Honor, it was the same agent who advised her at the arrest site, then processed her at the border patrol station. Only four hours had elapsed, and so he never acknowledges that I've already read. So what is it you're taking before we ask you any questions as the trigger that we should find here as a re-initiation? That's correct. Even though it just goes ahead and tells her, reaffirms what she had been told and she had invoked her. It doesn't ask her any question. It just says, before we ask any questions. Your Honor, there were five references to questioning from the form, so you have to look at the perspective of what the suspect is thinking. So I'd like to reserve the rest of my time to talk about it. You can reserve it, but go ahead and address now because I want to hear what you have to say. It's not just the reading of the form that you're relying on, though. As I understand it, what happened is that he read her the form, but they were in a room where they had the bricks of what she thought was cocaine, but was marijuana. And then they wound up taking her picture in front of it. Isn't that correct? That's right. So even if you don't find that that's enough, we think that the circumstances here actually do show that there's a functional equivalent. So what they did is they put her in a cell. They counted the marijuana outside the border processing station. Then they took her out of the cell, and they were in the processing center. They brought the bricks of marijuana in, which were 77 bricks. Then they had her stand behind the marijuana. And then they told her, you've been arrested for drug smuggling. Then they took the picture of her standing in front of the marijuana, and they testified that there was no purpose or reason for doing that. And then they re-advised her for Miranda rights at that point. And it's only then does she say, I have something to tell you. Okay.  I'll give you some time to rebut. Okay. May it please the Court, I'm Bob Miskell from the U.S. Attorney's Office in Tucson. Yeah, I'm sorry, Counsel, that mic. Yeah, if you can pull it as close to your room. Is there a way maybe to make it taller? It seems the taller people have trouble here. I'm Bob Miskell from the United States, from the U.S. Attorney's Office in Tucson, on behalf of the government. Thank you. This is Berkley's sound system, not the court system. All right. Why don't you restart, because it's not fair to jostle you like that. May it please the Court, I'm Bob Miskell from the U.S. Attorney's Office in Tucson, on behalf of the United States, in this matter. What this case boils down to is whether the actions in the Border Patrol Station were an interrogation. And based on what happened... Or the functional equivalent of an interrogation. That's the legal standard. It isn't just asking questions that surround. That's absolutely correct, Judge. And in this case, there were no questions asked, so we are in the functional equivalent area. Well, it seems that Counsel for the Appellant seems to... He thinks that Edwards is his best case and that that's where he would like us to start and finish. But asking you on the flip side, are there any circumstances where rereading the Miranda rights could violate Edwards v. Arizona? I didn't find any cases that explicitly held that. I did find a case, although admittedly the factual scenario was different, where this court held that the reading of Miranda warnings is incident to arrest and is not interrogation. And they were quite... The court in that case, that's the Ichiyasu case, was very firm on that. And I think the same applies here. Remember, all that was read to the defendant was the warnings. The agent did not ask the defendant to waive any rights or anything until the defendant reinitiated and said, I want to talk to you. So... So what are the factual... I was trying to... I went with Appellant's counsel on this. What are the factual findings that the district court made on that issue that would not be de novo issues? The district court adopted the findings of the magistrate judge in the report and recommendation. And the magistrate judge found that the rereading of the Miranda warnings was part of the normal processing of defendants at the border patrol station. Okay, so essentially believe the officer that this is something that they always do. So, but we could still say, even though you always do it, it is a violation of Edwards. But we couldn't say this isn't what they always do. Is that what that factual finding means? That's correct. And the magistrate's finding is certainly supported by the record. The agent actually testified there's a checklist of different forms that have to be filled out as they're doing their processing. And this form was one of the forms. Is the checklist in the record? No, it's not, Your Honor. Let me clear up a factual matter that may make a difference in terms of analyzing whether this is conduct that constitutes the functional equivalent of custodial interrogation. Counsel just stated that she was actually taken out into the room where the bricks of marijuana were being processed. She had her photograph taken with the bricks of marijuana. And then she was re-advised of her Miranda rights. And I wanted to ask you if that's correct, because I'm looking at page five of the magistrate judge's report and recommendation. And the magistrate judge said no evidence was presented as to whether the defendant was photographed with marijuana before or after she told the agent that she wanted to speak with him. What does the record reflect in terms of the agent's testimony on that point? There is no, in the record, in the agent's testimony, there's no time frame for when that photograph was taken. It was described as a photograph that was taken and is used basically as an identification photo to place outside the cell that the defendant is in so they know who's in there and who's supposed to be in there. But it seems a bit strange to me that she would have her photograph taken. It's a full-body photograph with the bricks of marijuana laid out, it looks like laid out at her feet. Is that something that's standard? There's nothing in the record to explain why. The only thing about the photo... I mean, if the reason is to place a photo in her cell to identify who's in that cell, I just don't see a reason for laying out the contraband in front of the suspect. So the inference, I'm sure that the appellants would argue, is that this is designed to make her make an incriminating statement. And it worked. Because the brick of marijuana, the bricks were packaged in such a way that she believed it was cocaine. So now she wanted to talk to them to say, wait a minute, I agreed to transport marijuana. I didn't agree to deal with cocaine. First of all, there was no testimony about when in time the photograph occurred. Well, but the counsel, the fact is the photograph was taken. So what about the answering Judge Wynn's question, why do it that way? If the purpose, whenever it was taken, was simply to place on her cell, a headshot would have been sufficient. There's no reason to include the contraband. So whenever it was taken, why? Why in that mode? Again, what the officer testified to was that he was responsible for the marijuana. He was processing the marijuana in the same room that he was processing the defendant. He explained that the picture was taken with basically a web camera attached to the computer. And that was all that was described on that. As the magistrate judge notes in his report and recommendation, this issue about the functional equivalent of interrogation really wasn't raised until after the evidentiary hearing. So the record is a little incomplete about what the temporal framework was. I mean, I can think of a pretty good reason. It's like if you want to see evidence, I'll pile it all up right in front of you. And it would sort of be like if your kids, you told them to clean the room, and they said, oh, I cleaned it. And then you just bring out all the junk and pile it right in front of their feet and say, so you cleaned your room? I don't see that the marijuana in the room, even a picture of the marijuana in the room, is any functionally different from what occurred in the Moreno case where the defendant was told by the agent, we see 600 pounds or kilograms of cocaine out of your vehicle, and you're in a lot of trouble. So we have no finding in the record when that photograph was taken relative to the reading of the rights. So we just know it was taken. We know the rights were reread. We know the magistrate judge said that was their process. Right. Right. And there were not any, and the officer, were the officers asked, why did you take that picture? And they said, I wanted, I had to stay in the room, and I wanted a picture of her by herself. The, as I remember the record, he was asked why the picture was taken. He was told, he answered that it was because they needed a picture, again, part of the process. They had a picture that they placed outside the cell, so to show that the cell was occupied. He was specifically asked, why is the marijuana in the picture? And he basically said, I think his exact quote was that there was no specific purpose or something close to that basis. So there was no finding that the magistrate either believed or disbelieved that part of it because no one argued, you know, counsel for the appellant didn't argue, hey, you just piled all that up to show her, you know, what the evidence was. That was argued later, after the findings had been made? No, no, they were argued after the evidentiary hearing, but before the findings were made. Okay. Was the, is the statement that was read, that's in the record? The Miranda statement? Yes. Yes, the actual form is in the record. Okay. And it's in appellant's excerpt of record. All right. And again, I do want to emphasize that the form is two parts, a reading of the rights, which does not contain any questions, and then a waiver portion. And the testimony was clear that the agent only read the rights and did not read the waiver until after the dependency. But it does say, apparently, because counsel was quoting from it, that before we ask you any questions. It does say that. And it refers to questions, but it doesn't ask any questions. Well, that's true. And the officer doesn't. If you're sitting in custody like that and the officer's got you in a very tight spot and unfriendly territory, and you've said, I want my counsel, and I've been told I don't have to answer any questions, and then they reread it to you and says, now, before we ask you any questions, you may wonder what the effect of your initial invocation of Miranda was, and you may feel somewhat intimidated, perhaps, or certainly confused. To the extent we want to infer that the defendant was somehow questioning how binding her statement about wanting an attorney was, the agent did the appropriate thing. When she said, I want to talk to you, he said, I can't talk to you. You invoked your right. So he advised her again that that was still good if she wanted to stand by that. It was not the kind of compulsion that you would see in the cases where a statement is suppressed on these grounds. He said, essentially, yeah, you said you didn't want to talk to me. I'll respect that. So is your view, then, that reading the rights, that there are cases that indicate that's not an interrogation, so you're just taking that off the plate? And so you're saying the only thing left would be whether the defendant's photograph with the evidence, whether that constitutes a functional equivalent of interrogation, or do we consider it altogether? I think the appropriate thing would be to consider it altogether, but I think the first, the rereading of the Miranda warning doesn't add much to the equation, when it's considered altogether, because the court specifically found that that was incident to the normal processing procedure, which is specifically exempted from the definition of interrogation. So are you aware of any cases that say that taking a picture with the evidence is the functional equivalent? No. I do know of a case that says telling them we see 600 pounds of cocaine is not. That's the Moreno case. Okay, thank you. You're out of time, and I'm going to let counsel respond why this should be the case. Thank you. Your Honor, just as far as the Moreno case, that was a Mosley case. It was a right to remain silent, so that colored the perspective of this court, and here Moreno clearly said that that case was not involved on Edwards' case. Now, as far as when the picture was taken, in the government's answering brief, page 5, they said it actually was taken before the re-advisory for Miranda rights, and the magistrate court said that they found that disconcerting is what the magistrate court found after that was taken. Can you refer us exactly in the record where it says that? Your Honor, it's the clerk's record, 61. The magistrate found the picture disconcerting because, and I quote, could have been an attempt to use a display of overwhelming evidence to pressure Ms. Warding to give up her rights, end quote, and that's clerk's record 61. Okay, that's talking about the picture, but where does it talk about relative to when the rights were read? It doesn't say, Your Honor. I'm just saying that the government in its answering brief said it was before, the picture was taken before the re-advisement of Miranda. It's in their answering brief on page 5. And, Your Honor, as far as the Orso case, we believe that this is just like Orso, if not worse so. Orso, they never actually advised Ms. Orso about her Miranda rights. He or she, my client or Ms. Morgan invoked, he then informed her of the evidence about the police officers and the robbery implicating her, the witnesses, the statutory penalties, and what we have here is the same thing. If this case is just like Orso, why didn't you cite Orso to it until we asked you to talk about it? Your Honor, it's because Orso was a case that did not involve Edwards. It was just a Miranda case, and so we didn't cite to Orso because there was no implication or Orso never invoked her right to counsel. So then it doesn't have relevance here? Well, it has relevance as far as the functional equivalence. Yes, it does as far as our second point. So I guess my point is if you're saying it's relevant for us to cite in the case in your favor, why didn't you cite it? Your Honor, like I said, we were looking for cases involving Edwards and then the renation of Miranda. Well, Orso was also part of a systemic, apparently, way for the officers to, before they Mirandized somebody, to soften them up, and it was deliberate. And, indeed, it was, as the Court of Opinion cites, it was conceded that he was doing what he did in the car to elicit a statement. And there's no such evidence in this case. In fact, there's expressed statements by, as counsel said, for the government said, they read her rights and he said you invoked her rights. I don't know how to tell him to answer that question. Your Honor, we think there was deliberateness here in some respect because she only said that after they stockpiled the evidence, they brought it out, took her picture, and then she says I'll have to sell you something. Then once she waived her rights, the agent then put her back in cell number seven and then reinterrogated her two and a half hours later. So it wasn't, like, done at that moment because at that point he said, well, I got what I wanted and I can put her back in the cell and just talk to her later. So we think in that respect it's somewhat like Orso. So we think this court should reverse the denial of her motion to suppress, Your Honor. Thank you very much. All right. Counsel, thank you very much. We realize this is somewhat unusual circumstances for you, but you've done a very good argument and we appreciate it. The case is submitted.
judges: Fisher, Callahan, Nguyen